Filed 1/25/22  Duff v. Jaguar Land Rover North America CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEN DUFF,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC,<br><br>    Defendant and Respondent. | D077537<br><br><br><br>(Super. Ct. No.  37-2016-00003200-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Michael E. Lindsey for Plaintiff and Appellant.

Lehrman, Villegas, Chinery & Douglas, Kate S. Lehrman, Jacqueline A. Bruce-Chinery and Robert A. Philipson for Defendant and Respondent.

Ken Duff leased a new vehicle.  After about 13 months into a three-year term, the vehicle began to experience mechanical and cosmetic issues. Because the vehicle was under warranty, Duff would take it to the dealer, and the dealer would make the necessary repairs.  However, Duff

experienced a mechanical failure while on the freeway, and the vehicle had to be towed to the dealer for repairs. The dealer determined that the vehicle needed to have the turbocharger and engine replaced.

While the dealer was repairing the vehicle, Duff submitted a claim through the vehicle's manufacturer's (Jaguar Land Rover North America, LLC (Jaguar)) alternative dispute resolution process, demanding that he receive a replacement vehicle. Jaguar disagreed and prepared to arbitrate the matter, but the dispute resolution process did not proceed because Duff failed to submit the necessary paperwork.

Duff then sued Jaguar, alleging three causes of action under the Song-Beverly Consumer Warranty Act (§ 1790, et seq.; Song-Beverly or the Act) and one under the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq; Magnuson-Moss). However, because of several delays, the case did not go to trial until more than three years after Duff filed the complaint. Between the time the complaint was filed and the case went to trial, the lease on the vehicle expired. Nonetheless, Duff extended the lease and ultimately purchased the vehicle before trial commenced.

At a bench trial, the court found that Duff failed to prove any of his causes of action except for breach of the implied warranty of fitness under Song-Beverly. In determining what damages were available to Duff for the breach, the court made a factual finding that Duff accepted the vehicle when he purchased it after the lease expired. As such, the court concluded Duff was not entitled to restitution under Civil Code[1] section 1794, subdivision (b)(1). Instead, the court determined that Duff could be awarded damages under subdivision (b)(2) of section 1794, but Duff had not proven

---

[1]     Statutory references are to the Civil Code unless otherwise specified.

any damages under that subdivision.  Consequently, the court awarded Duff $1 in nominal damages.

Duff appeals, arguing that the trial court violated Song-Beverly by failing to award him damages under section 1794, subdivision (b)(1).  We conclude none of Duff's arguments have merit and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Duff leased a new 2015 Land Rover Evoque from Land Rover San Diego on December 4, 2014.  The lease term was 36 months and required a monthly payment of $500.88.  In addition, Duff paid $5,600 upon signing the lease.  Under the terms of the lease, Duff had the option to return the vehicle at the end of the lease or purchase it.

The vehicle was leased with a limited warranty, provided by Jaguar, that covered defects in materials or workmanship for 48 months or 50,000 miles, whichever came first.  The vehicle also was subject to the implied warranty of merchantability, which existed for a year.

The lease contained a mileage allowance of 30,000 miles over the three-year term.  Thirteen months into the lease, Duff had driven the vehicle 26,106 miles.

Duff experienced several problems with the vehicle, and he took it to Land Rover San Diego for a number of repairs.  For example, on September 17, 2015, during the 20,000 mile maintenance service on the vehicle, the technician noticed the bulkhead insulation pad on the firewall was separating/delaminating.  A replacement part was ordered and installed at a later date.  Duff did not pay for this repair.

On October 6, 2015, the overhead console/sunglass holder also was replaced.  Duff did not pay for this repair.

On January 6, 2016, Duff told Land Rover San Diego that the vehicle's check engine light was on and that the vehicle would not shift into higher gears while his foot was on the gas pedal. The technician found that the turbocharger had failed and replaced it. In addition, the technician replaced the oxygen and oil temperature sensors. During these repairs, the vehicle was out of service for eight days. Duff did not pay for these repairs.

On January 18, 2016, the vehicle was towed to Land Rover San Diego because the vehicle started shaking while driving on the freeway. The technician determined that the engine needed to be replaced. Because there was not an engine readily available, the vehicle was out of service for 24 days while repairs were being made. Duff was provided a loaner vehicle at no cost. In addition, like the previous repairs, Duff did not pay for the replacement of the vehicle's engine.

While the vehicle was having its engine replaced, Duff decided to participate in one of Jaguar's independent alternative dispute resolution programs and contacted BBB Auto Line to make a claim to either obtain a replacement vehicle or have Jaguar repurchase the vehicle.[2] Jaguar did not believe the vehicle warranted repurchase; so, it opted to arbitrate the dispute. However, BBB Auto Line closed the claim because Duff did not return a signed customer claim form.[3]

---

[2]    The record is less than clear regarding what remedy Duff was seeking. During trial, Duff testified that he wanted the vehicle replaced. The documents in the record referring to Duff's inquiry with BBB Auto Line indicate that he was demanding the repurchase of the vehicle.

[3]    At trial, Duff testified that he could not recall if he submitted the required paperwork to BBB Auto Line.

On January 29, 2016, Duff filed suit against Jaguar, alleging four causes of action: (1) violation of Song-Beverly for failure to repair defects within a reasonable number of attempts (§ 1793.2, subd. (d)); (2) violation of Song-Beverly for failure to repair defects within 30 days (§ 11793.2, subd. (b)); (3) violation of Magnuson-Moss; and (4) breach of express and implied warranties under Song-Beverly. In the complaint, Duff alleged he "ha[d] rightfully rejected and/or justifiably revoked acceptance of the vehicle, and ha[d] exercised a right to cancel the sale. By serving this Complaint, [Duff] does so again."

Trial of this action was delayed and did not begin until January 15, 2019, some three years after the complaint was filed. The lease for the vehicle expired on December 4, 2017, nearly two years before trial. Duff extended the lease, and, on March 28, 2018, Duff exercised the lease option and purchased the vehicle. The purchase price was $31,407.36 and was financed over 72 months at 4.69 percent interest for a total amount of $36,093.60.

After the bench trial concluded, the court announced its tentative decision on February 6, 2019. To this end, the court indicated that it found Duff only proved his fourth cause of action: breach of the implied warranty. However, it requested further briefing regarding whether damages should be awarded under the fourth cause of action. The court explained:

> "It appears to the court that under Civil Code section 1794, there are two options for damages, depending on whether or not the plaintiff revokes. The court finds that the evidence that the plaintiff purchased the vehicle demonstrates that the plaintiff did not revoke, as a result, subsection (2) [of] 1794 applies where the buyer has accepted the goods.
>
> "Commercial Code section 2714 and 2715 applies. The measure of damages appear to be the cost of the repair

5

necessary to make the goods conforming and any incidental damages. The court finds that there are no costs to make the goods conforming, because the court finds that the defects have been repaired.

"The court also finds that no incidental damages were proven because the amounts incurred by plaintiff claimed as incidental damages would have been incurred, whether or not there were a defect and were not incurred as a result of the defect.

"So the question the court would have and I will entertain, if requested, further briefing on this issue only, if you want further briefing on this issue, then we'll set up a time frame for that and the time frames I've already announced would be extended for further briefing.

"The question that the court would allow further briefing on is, if the court finds, as it has, that the damages are only equal to the cost to make the goods conforming and incidental damages, what else would plaintiff be entitled to?

That's the question. In other words, I'm not—this is not a statement of decision question looking for additional briefing on anything else. It's only as to whether—because I don't believe this was addressed fully in closing argument —if the damages as set forth under Civil Code section 1794 and as set forth under the Commercial Code sections 2714 and 2715, and the court finds those damages have not been proven, is the plaintiff entitled to anything else?"

Duff's counsel indicated that he wanted to brief the issue the court proposed but asked if he could "also brief the acceptance of—or the rejection of and revocation of acceptance[.]" The court declined to allow Duff to brief the issue of acceptance/rejection. In addition, Jaguar's counsel agreed to brief the issue the court set forth as well.

At a hearing on March 29, 2019, the court indicated that the supplemental briefing submitted by the parties did not address its proposed

issue but, instead, were further closing arguments. The court then found that nominal damages under section 3360 were appropriate and awarded judgment in favor of Duff in the amount of $1. It then asked Jaguar to prepare the statement of decision.

While Duff's counsel and the court were discussing the possibility of Duff filing an amended request for a statement of decision, the court explained it "did not find [Duff] credible regarding the continued use or nonuse of the vehicle. Because I didn't make that statement before and because that was addressed in the proposed request for a statement of decision, I wanted to make that now."

In the court's first statement of decision, it stated that Duff had purchased the vehicle before he filed the complaint. As such, the court found that Duff "had already accepted the vehicle before his purported rejection. As a result, the purported rejection was ineffective." Duff objected to the statement of decision for multiple reasons. Relevant here, Duff took issue with the court's determination that he purchased the vehicle before filing the complaint on January 29, 2016 when it was undisputed that he purchased the vehicle on March 28, 2018.

The court subsequently acknowledged that the statement of decision contained a "scrivener's error." The court agreed it was undisputed that Duff purchased the vehicle after the complaint was filed. Accordingly, the court stated the statement of decision should read "that [Duff] had leased the vehicle, extended the lease, and then purchased the vehicle after he filed his complaint. The Court concluded the purported rejection or revocation of acceptance by filing the complaint was ineffective because [Duff] accepted the vehicle. This conclusion is unchanged by the correction. [Duff's] act of buying the vehicle at the end of the lease when he had no obligation to do so

7

rendered the purported rejection ineffective." The court then ordered Jaguar to submit a proposed, revised statement of decision to which Duff could object pursuant to the Rules of Court.

On December 9, 2019, the court issued a revised statement of decision. With respect to Duff's first cause of action, for failure to promptly repurchase or replace new motor vehicle after reasonable number of repair opportunities (§ 1793.2(d)), the court found: "[T]here was no defect covered by the warranty that substantially impaired the use, value or safety of the vehicle that was not repaired in a reasonable number of repair attempts." Regarding Duff's second cause of action, for failure to begin repairs within reasonable time or to complete repairs within 30 days (§ 1793.2(b)), the court determined: "On each occasion the vehicle was presented for service, the repairs were commenced within a reasonable time and completed within 30 days." The court also found that Duff had "failed to prove that he sustained any damages as a result of an alleged delay in repairs" because Jaguar "paid for the repairs to plaintiff's vehicle and plaintiff was provided a loaner vehicle free of charge while the vehicle was at the dealer for repairs." As to the third cause of action, for breach of express warranty under Magnuson-Moss, the court concluded that Duff "failed to prove that the defects in his vehicle were not repaired. All the defects in [Duff's] vehicle were successfully repaired within a reasonable time after discovery. [Duff] also failed to prove any damages as a result of an alleged failure to repair his vehicle." Additionally, the court found that Duff was barred from suing under Magnuson-Moss because he did not participate in Jaguar's dispute resolution process with the BBB Auto Line before he filed suit, as required by title 15 United States Code section 2310(a)(3).

Duff's fourth cause of action was for breach of express and implied warranty under Song-Beverly. Regarding the cause of action for breach of express warranty, the court determined that "all defects were successfully repaired in a reasonable time, at no cost to" Duff and that Duff did not prove a breach of express warranty. However, the court found that Duff had proven a breach of the implied warranty under Song-Beverly because the turbocharger and engine had to be replaced: "Clearly a vehicle with a turbocharger and engine [that] fail is a vehicle not of the same quality as those generally acceptable in the trade and not fit for the ordinary purposes for which vehicles are used."

The court observed that Song-Beverly provides two alternative measures of damages. Section 1794, subdivision (b)(1) states, "[w]here the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply." Section 1794, subdivision (b)(2) provides that "[w]here the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform." The court clarified that "[i]n sum, the measure under the first option is recovery of what was paid under the contract, while the measure under the second is the difference between the value of the goods accepted and the value they would have had if they had been as warranted, including the cost of repairs necessary to make the goods conform."

The court then explained, in detail, why it determined that Duff accepted the vehicle, and thus, damages under Commercial Code sections 2714 and 2715 applied. It provided:

> "While [Duff] would be entitled to a buyback if he revoked his acceptance or cancelled the lease, that did not occur.

Putting aside that [Duff] did not prove his first cause of action under Civil Code section 1793.2(d), [Duff's] acts made clear that he did not rightfully reject or justifiably revoke acceptance. Acceptance occurred when [Duff] had a reasonable opportunity to inspect the vehicle and signified, by his purchase, that he would retain it in spite of its nonconformity. [(]See Comm. Code, §§ 2606(1)(a) [acceptance occurs when the buyer after a reasonable opportunity to inspect the goods signifies that the goods are conforming or that he will retain them in spite of their nonconformity]; 10515(a) [analogous provision in context of a lease].[)]

"It is undisputed that [Duff] purchased the vehicle at the end of his three-year lease. Clearly [Duff] was not required to buy the vehicle in order to obtain a remedy. (See *Martinez v. Kia Motors America, Inc.* (2011) 193 Cal.App.4th 187, 191 [(*Martinez*)] [no requirement that a plaintiff still possess a vehicle to bring a claim under the Song-Beverly Act].) [Duff's] act of buying the vehicle at the end of the lease, even though he was under no obligation to do so, demonstrates that [Duff] accepted the vehicle and chose not to rescind the lease.

"[Duff] argued that he rejected the vehicle and/or revoked his acceptance by filing his Complaint. . . . However, [Duff] extended the lease and then purchased the vehicle after he filed his Complaint. The purported rejection or revocation of acceptance by filing the complaint was ineffective because [Duff] accepted the vehicle. [Duff's] act of buying the vehicle at the end of the lease when he had no obligation to do so rendered the purported revocation ineffective."

The court then explained that Duff did not prove he was entitled to any damages for the breach of the implied warranty under Civil Code section 1794, subdivision (b)(2):

"In sum, [Duff] is not entitled to rescissory damages under the first option but he would be entitled to damages under section 1794[, subdivision (b)(2)]. The measure of damages

10

under subsection [(b)](2) is the difference between the value of the vehicle he accepted and the value it would have had if it had been as warranted, including the cost of repairs necessary to make the goods conform, together with any incidental or consequential damages. In this regard, [Duff] simply failed to provide the Court with sufficient evidence of his damages."

The court entered judgment on February 5, 2020. Duff timely filed a notice of appeal.

DISCUSSION

Duff's appeal here is very limited. He only argues that the trial court erred in failing to award him damages under section 1794, subdivision (b)(1) after the court found that he proved a breach of the implied warranty under Song-Beverly. He does not claim the court erred in determining that he did not prove his damages under section 1794, subdivision (b)(2). Thus, we limit the focus of our inquiry to the trial court's determination that Duff was not entitled to damages under subdivision (b)(1).

Section 1794 describes two different remedies available for consumers seeking relief under Song-Beverly for a breach of the implied warranty of merchantability. If the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, " 'the buyer may . . . recover[ ] so much of the price as has been paid . . . .' " (*Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal.App.4th 402, 406; see § 1794, subd. (b)(1).) However, "[w]here the buyer has accepted the goods, . . . the measure of damages shall include the cost of repairs necessary to make the goods conform." (§ 1794, subd. (b)(2).) So, the remedies under Song-Beverly hinge upon whether the buyer has rejected or accepted the goods. Further, it is only when the buyer has rightfully rejected the goods that the buyer can recover the purchase price or what he or she paid under the lease.

11

Below, the trial court found that Duff's purchase of the vehicle after the lease expired, when he had no obligation to do so, proved that he accepted the vehicle. Consequently, based on this finding of fact, the court determined that he was not entitled to damages under section 1794, subdivision (b)(1). (See Comm. Code, §§ 2606, subd. (1)(a) [acceptance of goods occurs when the buyer after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity]; 10515, subd. (a) [acceptance of goods occurs after the lessee has had a reasonable opportunity to inspect the goods and the lessee signifies or acts with respect to the goods in a manner that signifies to the lessor or the supplier that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity].)

Yet, Duff does not challenge the court's critical factual finding. Curiously, he represents that the facts here are undisputed, and we should apply a de novo standard of review. Specifically, Duff insists "[t]he undisputed evidence showed that Duff revoked acceptance and never withdrew that revocation." A threshold problem with Duff's contention is that the trial court explicitly found his claim that he rejected the vehicle "was ineffective because [Duff] accepted this vehicle." The court explained that Duff's "act of buying the vehicle at the end of the lease, even though he was under no obligation to do so, demonstrate[d] that [Duff] accepted the vehicle and chose not to rescind the lease." On appeal, Duff still disputes that he accepted the vehicle by purchasing it. In other words, at the very least, he makes the implied argument that the court could not find he accepted the vehicle on the facts before it. Thus, he really is making a substantial evidence challenge to a factual finding. As such, we agree with Jaguar that the proper standard of review here is substantial evidence.

"In reviewing a judgment based upon a statement of decision following a bench trial, we . . . apply a substantial evidence standard of review to the trial court's findings of fact." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) "On substantial evidence review, we do not 'weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from it.'" (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1492.) We do not substitute our deductions for that of the trial court. (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.) When conducting a substantial evidence review, we view the whole record in a light most favorable to the judgment, we resolve all evidentiary conflicts in favor of the decision, and we draw all reasonable inferences in favor thereof. (*CADC/RADC Venture 2011-1 LLC v. Bradley* (2015) 235 Cal.App.4th 775, 787.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts." (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.)

The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Here, although Duff does not argue that the court's finding of acceptance is not supported by substantial evidence, he does imply that the court was incorrect to construe his purchase of the vehicle as acceptance. To this end, he claims that he maintained possession of the vehicle: (1) in

13

response to Jaguar's subpoena to produce the vehicle at trial; (2) to prevent the sale of a defective vehicle to the public without disclosure; and (3) out of concern about the safety of the vehicle. Yet, Duff's argument overlooks the fact that he testified at trial that he had no intention of keeping the vehicle and only purchased it based on his safety concerns: "It was for safety, the reason I kept the car." And the court rejected Duff's contention that his purchase of the car was not acceptance, and we cannot reweigh this evidence on appeal.[4] (See *Do v. Regents of the University of California, supra*, 216 Cal.App.4th at p. 1492.)

Here, we conclude that substantial evidence supports the trial court's factual finding that Duff accepted the vehicle. It is undisputed that, after the lease expired, Duff extended the lease and then purchased the vehicle. And Duff testified at trial that he did not consider returning the car once the lease expired, but instead, purchased the car "for safety" and that he kept the car to make sure that the public would be safe. He also testified that he had no intention of keeping the car if he lost the lawsuit, but he did not know "[w]hat

[4]     There is no indication in the record that Duff testified that he purchased the vehicle to comply with Jaguar's subpoena to produce the vehicle at trial. Indeed, Duff does not cite to anywhere in the record where he made that claim below. Instead, he appears to have created this argument on appeal. Accordingly, we do not consider it here. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [" 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived' "]; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [" ' " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court' " ' "].)

[he would] do with it . . . yet." Additionally, he admitted that he did not believe he had to purchase the vehicle to preserve his claims against Jaguar.[5]

In short, at trial, Duff, as the plaintiff, had the burden to prove the elements of a cause of action of breach of implied warranty under Song-Beverly. As part of his burden, he was required to show what damages, if any, he was entitled to under section 1794. Duff argued he rejected the vehicle by virtue of his initial claim to Jaguar's alternative dispute resolution procedure with BBB Auto Line as well as the allegations in the complaint that he rejected the vehicle. However, the court weighed this evidence against the fact that, after the lease expired, Duff extended the lease and then purchased the vehicle. Moreover, he purchased the vehicle over two years after he filed his complaint. Ultimately, the court found that Duff had accepted the vehicle and was not entitled to damages under subdivision (b)(1) of section 1794. This finding is supported by substantial evidence; Duff does not cogently argue otherwise. On this ground alone, we can affirm the judgment. Nevertheless, we briefly address Duff's legal challenges to the judgment as well.

---

[5] In addition, Duff's repeated argument throughout his briefs that he purchased the vehicle out of safety concerns is not well supported in the record. The court noted that both parties' respective expert witnesses agreed "that the vehicle was operating within specifications at the July 2017 vehicle inspection." Further, the court observed that after the engine was replaced in January 2016, Duff never presented the vehicle for additional repairs. And the court found "there was no defect covered by the warranty that substantially impaired the use, value or safety of the vehicle that was not repaired in a reasonable number of repair attempts." Here, Duff does not cite to the record to show what evidence, if any, was offered at trial proving the vehicle was unsafe except his bald assertion that he purchased the vehicle out of safety concerns.

15

Although Duff does not adequately address the trial court's factual finding that he accepted the vehicle, he advances purely legal arguments that assert the same unacceptable consequence: If we let this judgment stand, we will be undermining the consumer protections of Song-Beverly. Therefore, Duff argues the judgment should be reversed because it: (1) violates the "no waiver" rule under *Martinez, supra*, 193 Cal.App.4th 187; (2) treats lessees and purchasers differently in violation of section 1795.4, subdivision (b); (3) violates "established law" holding that continued use of a vehicle does not waive the right to demand replacement or reimbursement; and (4) permits defective vehicles to be sold to the general public without disclosure. We reject these contentions.

Duff argues this case is like *Martinez, supra*, 193 Cal.App.4th 187. In that case, the court rejected the assertion that Song-Beverly required a buyer to maintain possession of the defective vehicle to obtain restitution under the statute. The court explained: "[N]owhere does the Act provide that the consumer must own or possess the vehicle at all times in order to avail himself or herself of these remedies. All the Act requires of the buyer is that the buyer 'deliver [the] nonconforming goods to the manufacturer's service and repair facility' for the purpose of allowing the manufacturer a reasonable number of attempts to cure the problem. [Citations.] Once this delivery occurs and the manufacturer fails to cure the problem, the 'manufacturer shall' replace the vehicle or reimburse (make restitution to) the buyer. [Citations.] The Act says nothing about the buyer having to retain the vehicle after the manufacturer fails to comply with its obligations under its warranty and the Act. If the Legislature intended to impose such a requirement, it could have easily included language to that effect. It did not.

'We may not rewrite the section to conform to that unexpressed, supposed intent.' [Citation.]" (*Id.* at p. 194, fns. omitted.)

Duff asserts the instant action is analogous to *Martinez* because, like the trial court there, the trial court in the instant action added a requirement to Song-Beverly. Specifically, Duff argues the trial court's determination that he is not entitled to damages under section 1794, subdivision (b)(1) would add the requirement to the statute that all lessees of any vehicle must return the vehicle at the end of the lease term or waive damages under that subdivision. We do not see such a sweeping general principle arising out of the judgment in the instant action. The trial court here did not add any additional requirement to Song-Beverly. It simply made a necessary factual finding as required under section 1794 to determine what damages were available to Duff for breach of the implied warranty. In other words, contrary to adding a requirement to Song-Beverly, the trial court merely followed the Act.

Similarly, we are not persuaded by Duff's argument that the trial court's finding that he was not entitled to damages under section 1794, subdivision (b)(1) violated Song-Beverly because it resulted in the unequal treatment of purchasers and lessees. Under Song-Beverly, a lessee has the same rights as a purchaser of goods. (See § 1795.4, subd. (b).) Here, Duff argues that a purchaser who still owned a vehicle at the time of trial would not be deprived of damages under subdivision (b)(1) of section 1794, but he, as a lessee, was so denied simply because he purchased the vehicle after the lease expired and owned it at the time of trial. Not so. Whether a plaintiff is a purchaser or a lessee of a vehicle, to recover what he or she paid for the vehicle, the plaintiff must prove he or she "rightfully rejected or justifiably revoked acceptance of the goods or ha[d] exercised any right to cancel the sale." (§ 1794, subd. (b)(1).) Thus, Duff had to show that he rejected or

17

revoked acceptance of the vehicle. The court found that he did not satisfy this burden. Moreover, the court found that Duff had accepted the vehicle; so, he only was entitled to damages as set forth in section 1794, subdivision (b)(2). The court did not make this determination simply because Duff was a lessee who owned the vehicle at the time of trial. Rather, the court found Duff's purchase of the vehicle, after the lease expired, evidenced his acceptance of it. In reaching this factual finding, the court did not find credible Duff's claim that he only purchased the vehicle for "safety" reasons. In short, the court's factual finding that Duff accepted the vehicle was not based on treating lessees and purchasers differently under Song-Beverly. To the contrary, the court simply made a factual finding based on the evidence presented at trial.

Next, Duff insists the judgment should be reversed because the trial court improperly found that his continued use of the vehicle constituted "re-acceptance" of the vehicle, resulting in a finding that he waived damages that otherwise would have been available to him under subdivision (b)(1) of section 1794. (Cf. *Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1240-1241.) Duff's argument, however, is off the mark. Although the court "did not find credible [Duff's] testimony regarding his continued use/nonuse of the vehicle[,]" there is no indication in the record that the court found Duff accepted the vehicle based on his continued use of it. The court explicitly found that Duff accepted the vehicle as evidenced by his extension of the lease after it expired and his subsequent purchase of it: "[Duff's] act of buying the vehicle at the end of the lease, even though he was under no obligation to do so, demonstrate[d] that [Duff] accepted the vehicle and chose not to rescind the lease." Because the court did not base its finding that Duff accepted the vehicle based on his continued use of it, we summarily reject his

18

argument that we must reverse the judgment on the grounds it violates the principle that continued use does not waive the right to demand replacement or reimbursement.

Finally, we are not persuaded by Duff's argument that the judgment must be reversed because it violates the Automotive Consumer Notification Act (§ 1793.23; ACNA). "Civil Code section 1793.23 requires that the ownership certificate for a vehicle reacquired under the lemon law be 'title branded' with the inscription 'Lemon Law Buyback' and that a purchaser of the vehicle be notified that it is a lemon law buyback." (*R&B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 333.) Here, Duff maintains that the judgment required him to return the vehicle at the end of the lease "so [it] could be sold at auction without disclosure" in violation of the ACNA. Further, he argues that "[b]ecause the Court denied [him] rescission," Duff must "dispose of the defective vehicle" and Jaguar is able to "evade[] the disclosure and branding requirements of the ACNA." Duff's argument, however, again ignores the court's factual finding that he accepted the vehicle. Because the court made that finding, Jaguar was not required to repurchase the vehicle, and thus, the ACNA did not apply. Moreover, we read nothing in the ACNA that relieves a plaintiff suing under Song-Beverly of its burden of proving that he or she rejected or revoked its acceptance of the subject goods.[6]

---

[6] Duff also claims that Jaguar purposely delayed the trial past the lease expiration date essentially forcing Duff to purchase the vehicle. However, Duff did not testify at trial that Jaguar's litigation tactics compelled him to purchase the vehicle. Nor does he cite to anywhere in the record where he made such an argument. Therefore, we do not consider this contention on appeal. (See *Nelson v. Avondale Homeowners Assn.*, *supra*, 172 Cal.App.4th at p. 862; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*, *supra*, 163 Cal.App.4th at p. 564.)

In summary, the trial court made a factual finding that Duff accepted the vehicle when he purchased it after the lease expired although he had no legal obligation to do so.  That finding is supported by substantial evidence.  Further, we conclude that this factual finding as well as the judgment based on it did not violate Song-Beverly.  When a plaintiff proves a breach of implied warranty under Song-Beverly, he or she is entitled to different damages depending on whether the plaintiff rejected or accepted the goods.  Here, because the court determined Duff did not prove he rejected or revoked his acceptance of the vehicle (and, in fact, evidence proved he accepted the vehicle), he was not entitled to damages under section 1794, subdivision (b)(1).  The court therefore complied with the requirements of Song-Beverly.  There was no error.

## DISPOSITION

The judgment is affirmed.  Jaguar is entitled to its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


GUERRERO, J.


20